UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT BRAXTON,
                      Plaintiff,

-v-

TWU LOCAL 100, TRACEY YOUNG,
JOSE CASTRO, and RICHARD DAVIS,
                      Defendants.

16-CV-9425 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Plaintiff Robert Braxton brings this action against Defendants Transport Workers Union Local 100 ("TWU"), Tracey Young, Jose Castro, and Richard Davis for alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.* Defendants move to dismiss Braxton's Amended Complaint for failure to state a claim upon which relief can be granted. (Dkt. No. 13.) For the reasons that follow, Defendants' motion is granted.

**I.    Background**

    Plaintiff's Amended Complaint, filed *pro se*, is sparse on factual allegations. The Court has pieced together the following facts from Braxton's Amended Complaint and his Notice of Right to Sue letter from the Equal Employment Opportunity Commission ("EEOC"), which was attached to the complaint. The factual allegations in these documents are presumed true for purposes of deciding the motion to dismiss.

    Robert Braxton was employed as a bus operator by the New York City Metropolitan Transportation Authority ("MTA"). (Dkt. No. 5 ("FAC") at 7.) At some point during his employment, Braxton took leave to have knee replacement surgery on his right knee. (FAC at 8–9.) Braxton returned to work on May 27, 2015, at which time he was assigned to work as a "caretaker." (FAC at 9.) Braxton states that his "doctor has written letters" indicating that

1

Braxton should be "sedentary with bearing as needed" and that Braxton should do "no commercial driving." (FAC at 9.)

Braxton continued working as a caretaker until October 21, 2015, at which time Defendant Tracey Young, a representative[1] of TWU, informed Braxton that he could no longer work as a caretaker. (FAC at 3, 9.) Braxton alleges that on October 26, 2015, Young "took [him] off the schedule and replaced [him] with two operators who did not have any disabilities." (FAC at 3, 9.) Braxton then contacted Jose Castellon,[2] another union representative,[3] who informed Braxton that Young had gone "over his head and spoke[n] to Richard Davis," Vice President of TWU Local 100. (FAC at 3, 5.) Castellon told Braxton that Braxton was removed because his "union dues were not up to date." (FAC at 9.) Braxton then called Davis, but Davis refused to speak with him. (FAC at 3.) Braxton has not worked since that day. (FAC at 3.)

Braxton filed this lawsuit in December 2016. (Dkt. No. 2.) The allegations contained in Braxton's original complaint, however, were "conclusory claims of discrimination" that the Court concluded were "insufficient to state a claim under the ADA." (Dkt. No. 4 at 4.) The

---

[1] The Amended Complaint identifies Young as the "secretary of [the] union." (FAC at 2.) Young filed an affidavit in support of Defendants' motion to dismiss in which she identifies herself as Vice Chair of Manhattanville Bus Depo. (Dkt. No. 13-1 ¶ 1.) However, the Court declines to consider Defendants' supplemental materials at the motion-to-dismiss stage. *See Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) ("Rule 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.").

[2] Defendants note that Jose Castellon was incorrectly identified as "Jose Castro" in the Amended Complaint. (*See* Dkt. No. 13.) The docket reflects that service was never effected upon "Jose Castro" because there was "no one [at the address] with that name." (Dkt. No. 10.)

[3] The Amended Complaint indicates that Castellon's title is "Chairman of Local 100 TWU." (FAC at 5.) Young's affidavit identifies Castellon as the Manhattanville Depot Chair. (Dkt. No. 13-1 ¶ 2.)

2

Court directed Braxton to file an amended complaint "providing any facts from which an inference can be made that [any defendant] discriminated or retaliated against him based on his disability." (*Id.*)  The Order informed Braxton that his amended complaint "must provide a short and plain statement of the relevant facts supporting each claim against each defendant" and warned Braxton that "[b]ecause [his] amended complaint will completely replace, not supplement, the original complaint, any facts or claims that [he] wishes to maintain must be included in the amended complaint." (*Id.* at 5.)

Braxton filed the Amended Complaint in March 2017, and Defendants moved to dismiss. (*See* Dkt. No. 13.)  Despite a warning from the Court, Braxton failed to file an opposition to Defendants' motion to dismiss.  (*See* Dkt. No. 18.)

## II. Legal Standard

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, courts "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002)), and must draw "all inferences in the light most favorable to the non-moving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (Sotomayor, J.).  The Court is obliged to construe *pro se* pleadings liberally, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and to interpret them "to raise the strongest [claims] that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).

However, any complaint—even one filed by a *pro se* plaintiff—"must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

3

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**III.     Discussion**

The Amended Complaint asserts a claim under the ADA against Defendants for (1) failing to accommodate Braxton's disability, and (2) retaliating against him. (FAC at 2.) Braxton has named four defendants: TWU Local 100 and three individual TWU representatives. (FAC at 1.) Braxton has not named his employer, the MTA, as a defendant.

"Employment discrimination claims against labor organizations are analyzed differently from claims against employers." *Klaper v. Cypress Hills Cemetery*, No. 10 Civ. 1811, 2012 WL 959403, at *7 (E.D.N.Y. Mar. 21, 2012). Because "[c]laims against labor organizations are grounded in the union's duty of fair representation . . . to its members[,] . . . a plaintiff must make two showings to prevail on a[n] . . . ADA claim against a union: (1) 'that the union breached its duty of fair representation'; and (2) 'that [the union's] actions were motivated by discriminatory animus.'" *Id.* (last alteration in original) (quoting *McIntyre v. Longwood Cent. Sch. Dist.*, 380 Fed. App'x 44, 49 (2d Cir. 2010)). The Amended Complaint fails to meet either requirement.

First, "[a] union breaches its duty of fair representation only if its actions are either arbitrary, discriminatory, or in bad faith." *Jiggetts v. Allied Int'l Union*, No. 07 Civ. 11572, 2010 WL 2158331, at *3 (S.D.N.Y. Mar. 17, 2010), *report and recommendation adopted sub nom. Jiggets v. Allied Int'l Union*, No. 07 Civ. 11572, 2010 WL 2158322 (S.D.N.Y. May 26, 2010). A plaintiff can establish such a breach by demonstrating either intentional conduct or an "act[] of omission . . . 'so egregious, so far short of minimum standards of fairness to the employee and so

4

unrelated to legitimate union interests as to be arbitrary.'" *N.L.R.B. v. Local 282, Int'l Bhd. of Teamsters*, 740 F.2d 141, 147 (2d Cir. 1984) (quoting *Robesky v. Qantas Empire Airways, Ltd.*, 573 F.2d 1082, 1089–90 (9th Cir. 1978)).

Because TWU was not Braxton's direct employer, the Court construes Braxton's claim as one against TWU for a failure to fairly represent him in his employment dispute with the MTA. However, Braxton fails to allege any facts showing that TWU's conduct was "arbitrary, discriminatory, or in bad faith." *Jiggetts*, 2010 WL 2158331, at *3. Indeed, Braxton himself stated to the EEOC that his doctor had prohibited any "commercial driving." (FAC at 9.) As such, the Court cannot plausibly infer that TWU breached a duty to Braxton when it declined to challenge the MTA's decision to terminate his employment as a bus operator.

Alternatively, the Amended Complaint could be construed to assert a claim against Defendants for failure to seek an accommodation in the form of permanent reassignment to a caretaker position. However, "[a] reasonable accommodation can never involve the elimination of an essential function of a job"—such as a bus operator being able to drive a bus—and "it is not at all clear that the ADA requires reassignment to another job altogether." *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100, 104 (2d Cir. 2003). TWU did not act arbitrarily by declining to seek such a questionable accommodation. *See Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1153–54 (2d Cir. 1994) ("[T]he duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance.").

Second, to demonstrate Defendants' discriminatory animus, Braxton "must ultimately show that the union's actions were motivated by discriminatory or retaliatory intent." *Durant v. Union Local 237*, No. 12 Civ. 1166, 2013 WL 1232555, at *6 (E.D.N.Y. Mar. 4, 2013), *report*

5

*and recommendation adopted*, No. 12 Civ. 1166, 2013 WL 1247520 (E.D.N.Y. Mar. 26, 2013). However, as in the original complaint, the Amended Complaint has "fail[ed] to allege facts suggesting that . . . Defendants took any adverse action against [Braxton] because of his disability." (Dkt. No. 4 at 4.)

The Amended Complaint merely states that Braxton was replaced by "two operators who did not have any disabilities." (FAC at 3.) But Braxton admits that his doctor prohibited him from operating a commercial vehicle; as a result, the MTA's decision to fill his vacant bus-operator position does not plausibly support an inference of animus on the part of the MTA. And even if Braxton had plausibly alleged that the MTA acted with discriminatory intent, he has alleged no facts to support an inference that TWU harbored such an intent as well. To the contrary, Braxton alleges that TWU failed to represent him "because of [his] Union dues." (FAC at 3.) In short, Braxton has not "'nudged [his] claim' of invidious discrimination 'across the line from conceivable to plausible.'" *Iqbal*, 556 U.S. at 680 (alterations in original) (quoting *Twombly*, 550 U.S. at 570).[4]

Finally, the Amended Complaint also fails to allege any facts to support Braxton's retaliation claim. "To make out a *prima facie* case of retaliation, [the plaintiff] must show that (1) [he] was engaged in an activity protected under . . . the ADA, (2) the Union[] [was] aware of [the plaintiff's] participation in the protected activity, (3) [the plaintiff] suffered adverse union decisions, and (4) there was a causal connection between [his] protected activity and the adverse action taken by the Union[]." *Nweke v. Prudential Ins. Co. of Am.*, 25 F. Supp. 2d 203, 230

---

[4] To the extent the Court could construe Braxton's *pro se* complaint as asserting claims under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"), those claims fail for substantially the same reasons as Braxton's ADA claim. *See McDonnell v. Schindler Elevator Corp.*, 618 F. App'x 697, 698–700 (2d Cir. 2015).

(S.D.N.Y. 1998). The Amended Complaint does not identify what "protected activity" prompted TWU's alleged retaliation, and the Court can only assume that the Amended Complaint is referencing the charge of employment discrimination that Braxton filed with the EEOC. However, Braxton's termination *preceded* his EEOC charge, making it impossible for Braxton's protected activity to have caused TWU's alleged retaliation.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 13 and to close the case.

SO ORDERED.

Dated: December 21, 2017
New York, New York

_____
J. PAUL OETKEN
United States District Judge

*COPY MAILED TO PRO SE PARTY BY CHAMBERS*